1  MCGUINNESS & ASSOCIATES
   JOSEPH G. McGUINNESS - State Bar No. 115983
2  3858 Carson Street, Suite #301
   Torrance, California 90503
3  Telephone: (310) 792-0495
   Facsimile: (310) 792-0520
4
   Attorneys for Plaintiff
5  DONALD ANDERSON

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10 _____
                                      )  Case No. 2:17-cv-06671-VAP (KSx)
11 DONALD ANDERSON, an individual,    )
                                      )  **OPPOSITION TO MOTION TO**
12            Plaintiff,              )  **DISMISS FOR LACK OF**
                                      )  **PERSONAL JURISDICTION**
13      v.                            )  **AND/OR IMPROPER VENUE**
                                      )
14 THADDEUS MICHAEL BULLARD          )  **REQUEST FOR DISCOVERY INTO**
   SR. ("TITUS O'NEIL"), an individual; )  **JURISDICTIONAL ISSUES**
15 and DOES 1 through 300, Inclusive  )
                                      )
16            Defendants.             )
   _____)
17                                       **Date:      November 13, 2017**
                                         **Time:      2:00 p.m.**
18
                                         **Courtroom 8A**
19
                                         **Honorable Virginia A. Phillips**
20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I. **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. **FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    **Bullard's Brutal Physical Attack of Anderson** . . . . . . . . . . . . . 1

    B.    **Witnesses and Medical Treatment** . . . . . . . . . . . . . . . . . . . 3

    C.    **Bullard's Continuous and Substantial Contacts with California** . . . 3

III. **LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    **Legal Standard** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.    **California Has General Jurisdiction Over Bullard** . . . . . . . . . . 7

    C.    **California Has Specific Jurisdiction Over Bullard** . . . . . . . . . . . 9

            *1.*    ***Bullard Has Purposefully Availed Himself of California Benefits*** . . . . . . . . . . . . . . . . . . . . 10

            *2.*    ***The Controversy Arises Out of Bullard's Contacts with California*** . . . . . . . . . . . . . . . . . . . 10

                    *a.*    *The Contract Under Which the Parties Were Acting Was with a California Company and with a California Choice of Law Provision* . . . . . . . 11

                    *b.*    *The Commission of an Intentional Tort Against a California Resident Subjects the Tortfeasor to the Jurisdiction of the California Courts* . . . . . . . . . . . . . . . . . . . 11

            *3.*    ***Personal Jurisdiction Over Bullard in California Is Reasonable*** . . . . . . . . . . . . . . . . . . . 12

                    *a.*    *There Is a Minimal Burden on Bullard to Defend the Lawsuit in California* . . . . . . . . . . . . . . . 13

                    *b.*    *California Has Strong Interests in the Underlying Litigation* . . . . . . . . . . . . . . . . . . . . 13

                    *c.*    *The Interests of the Plaintiff Are Served by Jurisdiction in California Because all the Witnesses Are Here* . . . . . . . . . . . . . . . . . . . 13

                    *d.*    *Allowing Jurisdiction Allows for Interstate Efficiency* . . . . . . . . . . . . . . . . . . . . . 14

                    *e.*    *Allowance of Jurisdiction Serves Interstate Policy Interests* . . . . . . . . . . . . . . . . . . . . . . 15

               *f.*     *No Alternative Jurisdiction Exists for the Claims* . . . . . . . . . . . . . . . . . . . . . . . . . 15

**D.**    **California Is the Only Appropriate Venue for the Action** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**E.**    **Plaintiff Should Be Permitted to Perform Jurisdictional Discovery** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**IV. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

**Statutes**

28 U.S.C. § 1390(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. § 1441(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cal. Code Civ. Proc. § 410.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Cases**

*Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987) . . . . . . . . . . . 12-13

*AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586 (9th Cir. 1996) . . . . . . . . . . . . 6

*Buckeye Boiler Co. v. Superior Court* (1969) 71 Cal.2d 893 . . . . . . . . . . . . . . . 13

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) . . . . . . . . . . . . . . . . . . . . 7, 9, 11

*Burnham v. Superior Court*, 495 U.S. 604, 618-619 (1990) . . . . . . . . . . . . . . . . . . 7

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535 (9th Cir. 1986) . . . . . 16

*Calder v. Jones*, 465 U.S. 783 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12, 15

*Cassiar Mining Corp. v. Superior Court*, 66 Cal.App.4th 550 (1998) . . . . . . . . . . . . 9

*Cornelison v. Chaney*, 16 Cal. 3d 143 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

*Daimler AG v. Bauman*, 571, US. __, 134 S. Ct. 746 . . . . . . . . . . . . . . . . . . . 7-8

*Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280 (9th Cir.1977) . . 12, 12, 15

*Dorchester Fin'l Securities, Inc. v. Banco BRJ, S.A.* 722 F.3d 81 (2nd Cir. 2013) . . . . 6

*Goehring v. Superior Court*, 62 Cal.App.4th 894 (1998) . . . . . . . . . . . . . . . . . . . 16

*Henderson v. Superior Court*, 77 Cal.App.3d 583 (1978) . . . . . . . . . . . . . . . . . . . 7

*Hunt v. Erie Ins. Group*, 728 F.2d 1244 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . 7

*Internat. Shoe Co. v. Washington*, 326 U.S. 310 (1945) . . . . . . . . . . . . . . . . . . . . 6

*Jewish Defense Organization, Inc. v. Superior Court*, 72 Cal.App.4th 1045 (1999) . . . 9

*Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F3d 531 (6th Cir. 2002) . . . . . . . . 15

*Laub v. U.S. Dept. of Interior*, 342 F.3d 1080 (9th Cir. 2003) . . . . . . . . . . . . . . . 16

*Littlejohn v. Shell Oil Co.*, 483 F.2d 1140 (5th Cir. 1973) . . . . . . . . . . . . . . . . . . 16

*Neadeau v. Foster*, 129 Cal. App. 3d 234, 239–40 (1982) . . . . . . . . . . . . . . . . . . 8

*Paccar Intern., Inc. v. Commercial Bank of Kuwait*, 757 F.2d 1058 (9th Cir.1985) . . . 12

*Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316 (9th Cir.1998) . . . . . . . . . . . . . . . . 13

*Perkins v. Benguet Mining Co.* 342 U.S. 437 (1952) . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*Polizzi v. Cowles Magazines, Inc.,* 345 U.S. 663 (1953) . . . . . . . . . . . . . . . . . . . . . . . 15

*Seagate Technology v. A.J. Kogyo Co., Ltd.,*
     219 Cal.App.3d 696, 702–703 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

*Sher v. Johnson,* 911 F.2d 1357 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Sibley v. Superior Court,* 16 Cal. 3d 442 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191 (9th Cir. 1988) . . . . . . . . . . . . 13, 14

*Skidmore v. Syntex Laboratories,* 529 F.2d 1244 (5th Cir. 1976) . . . . . . . . . . . . . . . 16

*Traveler's Health Assn. v. Virginia,* 339 U.S. 643 (1950) . . . . . . . . . . . . . . . . . . . . . . 13

*Vons Companies, Inc. v. Seabest Foods, Inc.,* 14 Cal. 4th 434 (1996) . . . . 6, 7, 9, 10, 11

*World–Wide Volkswagen v. Woodson,* 444 U.S. 286 (1980) . . . . . . . . . . . . . . . . . . . . 12

*Zippo Mfg. Co. v. Zippo Dot Com,* 952 F.Supp. 1119 (W.D.Pa. 1997) . . . . . . . . . . . 8-9

**Secondary Sources**

4A *Moore's Federal Practice* ¶ 30.53 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2009 . . . . . . . . . . . . . . . 16

## I. **INTRODUCTION**

Based on dicta in a completely inapposite Supreme Court opinion, Defendant Thaddeus Michael Bullard ("Bullard") asks this Court to ignore 70 years of legal precedent, and simply abolish the concept of general personal jurisdiction. The Court should decline Bullard's invitation to part with well-settled law, notwithstanding Bullard's anticipation that the Supreme Court intends to do so sometime in the future.

Bullard's own publications demonstrate nearly 30 occasions that he has traveled to California to participate in promotional events, not only as part of his contractual work with co-defendant WWE Enterprises, Inc. ("WWE"), but to promote his own "Titus World Wide" brand (the "Brand"). Bullard's contacts with California are the very definition of "continuous and systematic."

Bullard consistently and purposefully avails himself of the benefits of California. He should expect to be haled into court in California to answer when he brutalizes a California citizen, employed by a California company in contract with his employer, the WWE, which includes a California choice of law provision, and resulted in benefits being paid under the California workers' compensation laws.

Moreover, despite the unsupported assertions of Bullard, almost all of the pertinent witnesses to his attack on Anderson are in California. Anderson's medical treatment occurred exclusively in California. The witnesses to the attack were Anderson's co-workers, who all reside in California. California is by far and away the most appropriate venue for this litigation.

Bullard's motion to dismiss or transfer venue should be denied.

## II. **FACTUAL BACKGROUND**

### A.    **Bullard's Brutal Physical Attack of Anderson**

Anderson was engaged by Uranus Productions, LLC ("Uranus"), a California limited liability company, to work in conjunction with WWE to produce an "electric shock prank" television show. The contract between Uranus and the WWE contains a California choice of law provision. (Ex. A.)

1    On May 18, 2015,  Anderson was on the premises managed by the WWE, during

2    the production of the WWE electric shock prank program.  At the time, Anderson was a

3    camera operator for Uranus.  The WWE retained Uranus to produce such content for

4    WWE entertainment purposes.  WWE representatives undertook the job of selecting

5    specific WWE personalities as targets on which to use the electric shock device as a

6    prank.

7    Bullard was known by the WWE to possess significant anger management issues.

8    WWE representatives provided a tour of the facility for the prank, and during that tour,

9    used the electric shock device on various WWE personnel.  Anderson followed closely

10   behind WWE representatives, as he was directed to do, to film the pranks using a hand-

11   held camera.  The WWE representatives selected Bullard as a target and prank subject,

12   and used the electric shock device on him.

13   Bullard is a six-foot, six-inch, 265 pound, ex-professional football player and

14   current professional WWE wrestling "Superstar" under the stage name "Titus O'Neil."

15   The WWE website maintains a WWE Superstar profile, which states, Titus O'Neil

16   "knows a thing or two about hard-hitting physical dominance."

17   Once WWE representatives shocked Bullard with the electric shock device,

18   Bullard became enraged and began shouting, and he raced up to plaintiff Anderson in a

19   threatening manner.  Bullard proceeded to forcefully kick Anderson's wrist, hand and

20   fingers, which were supporting and grasping the camera to film the prank activity.  The

21   blow by Bullard to Anderson's body was so strong that the camera, along with

22   Anderson's hand, fingers and wrist were violently propelled outward from Anderson's

23   person as a result of Bullard's powerful kick.

24   The kick caused permanent injuries to Anderson's wrist and hand, and his fingers

25   were impacted and injured for a significant initial period of time.  Because Anderson is

26   a professional camera operator, the ability of use of his hands is necessary for him to

27   carry out his profession.

28

1    Directly following the incident, Anderson was told by WWE personnel that he

2    was not safe on the premises, that Bullard could not be controlled, and that Anderson

3    had to leave immediately because defendant Bullard had become unmanageable and

4    presented an ongoing threat of harm to Anderson.  Plaintiff was whisked away from the

5    scene of the incident, in fear of the possibility of further attacks by Bullard.

6    **B.**     **Witnesses and Medical Treatment**

7    At the time of the attack, Anderson was employed by a California company.

8    Other than Bullard and the WWE employee who was directing the prank show for the

9    WWE (a WWE personality known as "Paige"), all of the people involved in arranging,

10   producing, and filming the show, and in the aftermath of the attack, are residents of

11   California.  These people include, but are not limited to: Atousa Hojatpanah, J.P.

12   Blackmon, Cordell Mansfield, Ivan Acero, Andrew Laboy, Rick Kosick, Ben Pluimer

13   and Scott Manning. (Anderson Dec., ¶3.)  Each of these individuals are likely to be the

14   key witnesses in this matter.

15   In addition, Anderson treated for his injuries exclusively in California, through

16   medical treatment arranged through Uranus's workers' compensation carrier.  These

17   treatments include his ongoing care with Ventura Orthopedics in Oxnard, California and

18   Align Networks in West Hills, California.  (Anderson Dec., ¶2.)

19   Other than himself, Bullard fails to identify a single witness that does not reside

20   in California.

21   **C.**     **Bullard's Continuous and Substantial Contacts with California**

22   Despite Bullard's protestations to the contrary, he is constantly traveling to

23   California for both the WWE and for the purposes of his own business interests and his

24   Brand.

25   The First Amended Complaint alleges that an examination of the most recent

26   months on Titus O'Neil's Instagram and Twitter account, demonstrates that Bullard has

27   been to California nearly every single month for various business reasons, including but

28   not limited to:

(1)   Promoting his Brand and recruiting members to join his brand on at Citizens Bank Arena in Ontario, California, September 25, 2017 (Ex. B);

(2)   Promoting his Brand with Chargers Football owners at the StubHub Center in Carson, California, September 24, 2017 (Ex. C);

(3)   Promoting his Brand and recruiting other celebrity figures at the San Francisco 49ers football stadium, September 18, 2017 (Ex. D );

(4)   Appearing and promoting his Brand at the Oakland Raiders game, September 17, 2017 (Ex. E);

(5)   Promoting his Brand at the Los Angeles Rams game at the Los Angeles Memorial Stadium, September 11, 2017 (Ex. F);

(6)   Promoting his Brand with WWE member and Dancing ABC members at the Honda Center in Anaheim, California on September 10, 2017 (Ex. G);

(7)   Traveling to San Diego, California, September 9, 2017 (Ex. H);

(8)   Promoting his Brand with the Sacramento Kings basketball player Vince Carter in Sacramento, California, August 30, 2017 (Ex. I);

(9)   Promoting his Brand with celebrity Akira Tozawa ("@tozawaakira") in Los Angeles, California, June 26, 2017 (Ex. J);

(10)   Promoting his Brand with celebrity LaVar Ball at the Staples Center in Los Angeles, California, June 26, 2017 (Ex. K);

(11)   Meeting with his business team at LB Entertainment in Los Angeles, California, "talking about some exciting opportunities," June 26, 2017 (Ex. L);

(12)   Promoting his Brand at UCLA in Los Angeles, California, June 26, 2017 (Ex. M);

(13)   Promoting his Brand at UCLA, May 20, 2017 (Ex. N);

(14)   Performing a TED Talk at UCLA, May 18, 2017 (Ex. O);

(15)   Working for the WWE and RAW at the Staple Center in Los Angeles, California, February 20, 2017 (Ex. P);

(16)   Working for the WWE LIVE in Long Beach, California, February 19, 2017 (Ex. Q);

(17)   Working for the WWE and RAW at the Oakland Raiders Headquarters in Alameda, California on October 10, 2016 (Ex. R); and

(18)   Working on WWE Live in Stockton, California, August 7, 2016 (Ex. S);

(19)   Working in Fresno, California, August 8, 2016 (Ex. S);

(20)   Working on WWE -RAW in Anaheim, California, August 9, 2016 (Ex. S);

(21)   Working in Fresno, California at WWE Live, on August 2, 2015 (Ex. T);

(22)   Working in San Diego, California at WWE Live, on July 31, 2015 (Ex. U);

(23)   Working in Los Angeles, California at WWE Live, on July 25, 2015 (Ex. V);

(24)   Working in Los Angeles, California attending NBC Upfronts 2015 on May 14, 2015 (Ex. W);

(25)   Working and training at the 49ers Levi Stadium in California for the WWE WrestleMania on March 25, 2015 (Ex. X);

(26)   Working on WWE-Raw in Los Angeles, California on March 23, 2015 (Ex.Y); and

(27)   Working and training at the with the Steelers in California on March 9, 2015 (Ex. Z).

In addition, Bullard's brand sells merchandise online at: https://shop.wwe.com/titus-oneil-worldwide-authentic-t-shirt/HI2001.html, a website that transacts business with California residents on a regular basis.

Bullard states that: "Other than any such work as I may do under contract with WWE. . .I have not conducted any business in California." Bullard further claims his work in California has "amounted to, on average, between two and ten appearances in California in any given year." (Bullard Dec., ¶ 7.) Based on the information Bullard posts on his own social media platform, Bullard is simply a liar.

1     Bullard does admit, however, that a significant portion of his contacts with

2  California arise from his employment with the WWE.  This litigation also arises directly

3  from that employment.  The WWE entered a contract with a California company, to

4  produce a show using exclusively California employees, and which had a California

5  choice of law provision.  During the filming of that show, Bullard brutally assaulted Mr.

6  Anderson.  Bullard admits that the conduct falls within his contacts with the forum.

## III. <u>LEGAL ANALYSIS</u>

### A.   <u>Legal Standard</u>

9     In opposing a motion to dismiss on the papers, plaintiff need only make a "prima

10  facie" showing of jurisdictional facts to establish a basis for personal jurisdiction, the

11  uncontroverted allegations of the complaint must be taken as true, and the court will

12  draw all reasonable inferences in plaintiff's favor.  (*AT&T v. Compagnie Bruxelles*

13  *Lambert*, 94 F.3d 586, 588 (9th Cir. 1996); *Dorchester Fin'l Securities, Inc. v. Banco*

14  *BRJ, S.A.,* 722 F.3d 81, 84 (2nd Cir. 2013).)

15     California courts may exercise jurisdiction over nonresidents "on any basis not

16  inconsistent with the Constitution of this state or of the United States." (Cal. Code Civ.

17  Proc. § 410.10.)  Cal. Code of Civil Procedure section 410.10 "manifests an intent to

18  exercise the broadest possible jurisdiction, limited only by constitutional

19  considerations." (*Sibley v. Superior Court*, 16 Cal. 3d 442, 445 (1976).)

20  The federal Constitution permits a state to exercise jurisdiction over a nonresident

21  defendant if the defendant has sufficient "minimum contacts" with the forum such that

22  "maintenance of the suit does not offend 'traditional notions of fair play and substantial

23  justice.' [Citations.]" (*Internat. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).)

24     Personal jurisdiction may be either general or specific. (*Vons Companies, Inc. v.*

25  *Seabest Foods, Inc.,* 14 Cal. 4th 434, 445 (1996) ("*Vons*").)  A nonresident defendant is

26  subject to the forum's general jurisdiction where the defendant's contacts are

27  "'substantial . . . continuous and systematic.'" (*Ibid.*, quoting *Perkins v. Benguet Mining*

28

1 │ *Co.* 342 U.S. 437, 445, 446 (1952).)  In effect, a defendant's contacts with the forum

2 │ "take the place of physical presence in the forum as a basis for jurisdiction. (*Burnham v.*

3 │ *Superior Court*, 495 U.S. 604, 618-619 (1990); *Vons*, at p. 446.)

4 │      If the nonresident defendant does not have substantial and systematic contacts

5 │ with the forum state, the defendant may be subject to specific jurisdiction if (1) the

6 │ defendant has purposefully availed itself of forum benefits with respect to the matter in

7 │ controversy, (2) the controversy is related to or arises out of the defendant's contacts

8 │ with the forum, and (3) the exercise of jurisdiction would comport with fair play and

9 │ substantial justice. (*Vons*, at p. 446, 447; see also *Burger King Corp. v. Rudzewicz*, 471

10 │ U.S. 462, 472, 476 (1985).)

11 │      **B.**    **California Has General Jurisdiction Over Bullard**

12 │      General jurisdiction arises when a nonresident defendant's activities in the forum

13 │ are so extensive that due process does not require a connection between the cause of

14 │ action pleaded and the nature of the defendant's activities in the state. (*Hunt v. Erie Ins.*

15 │ *Group*, 728 F.2d 1244, 1246 (9th Cir. 1984). Thus, a court may exercise general

16 │ jurisdiction over a nonresident defendant when the defendant's activities within the state

17 │ are extensive or wide-ranging, or substantial, continuous, and systematic, and there is no

18 │ requirement that the cause of action alleged be connected with defendant's forum-related

19 │ activities. (*Perkins v. Benguet Consol. Min. Co.*, *supra*, 342 U.S. at 446; *Cornelison v.*

20 │ *Chaney*, 16 Cal. 3d 143, 147 (1976); *Henderson v. Superior Court*, 77 Cal.App.3d 583,

21 │ 590 (1978).

22 │      Bullard insists the Court should ignore the well-settled precedent permitting

23 │ courts to exercise general jurisdiction over a party based on dicta in a Supreme Court

24 │ case indicating that the concept of general jurisdiction is "obscolesing." (*Daimler AG v.*

25 │ *Bauman*, 571, US. __, 134 S. Ct. 746, 760 ("*Daimler*").)  But the facts of indicate that it

26 │ has no precedential value whatsoever in the case at bar.

27 │      In *Daimler*, the Supreme Court determined that personal jurisdiction did not exist

28 │ over "a claim brought by foreign plaintiffs against a foreign defendant based on events

occurring entirely outside the United States." (*Daimler* at 750.) In *Daimler*, twenty-two Argentinian residents filed a complaint in the United States District Court for the Northern District of California against DaimlerChrysler Aktiengesellschaft, a German public stock company, headquartered in Stuttgart, that manufactures Mercedes-Benz vehicles in Germany. The complaint alleged that during Argentina's 1976-1983 "Dirty War," Daimler's Argentinian subsidiary, Mercedes-Benz Argentina collaborated with state security forces to kidnap, detain, torture, and kill certain MB Argentina workers, among them, plaintiffs or persons closely related to plaintiffs. (*Daimler* at 750.)

The only basis for personal jurisdiction alleged was that a different subsidiary of the German company, Mercedes-Benz USA, LLC, had sufficient contacts with California to require the parent to participate in litigation in California concerning actions taken in Argentina affecting only residents of Argentina. (*Ibid.*) The Supreme Court held: "Exercises of personal jurisdiction so exorbitant, we hold, are barred by due process constraints on the assertion of adjudicatory authority." (*Ibid.*)

The facts of *Daimler* demonstrate the *limits* of general jurisdiction, not that the Supreme Court has decided to abolish the concept. Indeed, cases that have considered the contours of general jurisdiction demonstrate that Bullard's ongoing business activities subject him to general jurisdiction in California. For example, one California decision states:

> Facts adduced at the hearing on the motion indicate defendant does extensive and wide-ranging business in California. **He is involved in business throughout the United States and five percent of his business consists of merchandise sold within California. Defendant makes frequent visits to California, apparently in connection with his business enterprise. As a matter of commercial actuality defendant has engaged in economic activity within this state, and has thus obtained the benefits and protection of the laws of California.**"

(*Neadeau v. Foster*, 129 Cal. App. 3d 234, 239–40 (1982).)

Another court, applying the holding in *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F.Supp. 1119, 1123-24 (W.D.Pa. 1997), states:

> The maintenance by a nonresident defendant of a commercial internet site that forum state residents can access and interact with is exactly the type of continuous and systematic contact that gives rise to general jurisdiction.

(*Jewish Defense Organization, Inc. v. Superior Court*, 72 Cal.App.4th 1045, 1060 (1999).)

Despite Bullard's contention that *Daimler* stands for the proposition that general jurisdiction is no longer a valid basis for establishing personal jurisdiction over a non-resident, *Daimler*'s holding is not nearly so broad. *Daimler* just established that general jurisdiction does not exist where the exercise of jurisdiction would be "exorbitant."

The First Amended Complaint alleges long-standing systematic and continuous contacts between Bullard and California, which include nearly 30 visits to the state, a website interacting with California patrons, and contracts between WWE and a California company.

Bullard attempts to refute these contentions with a conclusory, self-serving, and demonstrably false declaration. At minimum, Anderson should be entitle to perform discovery with respect to Bullard's jurisdictional contentions. (See, *infra*, p. 16.)

C.  **California Has Specific Jurisdiction Over Bullard**

Even the Court were not to find general jurisdiction exists over Bullard, specific jurisdiction exists in this matter. The claim arises out of a contractual relationship between Bullard's employer, WWE, and Anderson's employer, and events that occurred when Anderson and Bullard were involved in fulfilling those contractual obligations.

Specific jurisdiction exists if (1) the defendant has purposefully availed itself of forum benefits with respect to the matter in controversy, (2) the controversy is related to or arises out of the defendant's contacts with the forum, and (3) the exercise of jurisdiction would comport with fair play and substantial justice. (*Vons*, at p. 446, 447; *Burger King Corp. v. Rudzewicz*, *supra*, 471 U.S. at 472, 476; *Cassiar Mining Corp. v. Superior Court*, 66 Cal.App.4th 550, 555-58 (1998).)

### 1. *Bullard Has Purposefully Availed Himself of California Benefits*

> A state may exercise specific jurisdiction over a nonresident who purposefully avails himself or herself of forum benefits, because the state has "a 'manifest interest' in providing its residents with a convenient forum **for redressing injuries inflicted by out-of-state actors**. [Citations.] Moreover, where individuals **'purposefully derive benefit' from their interstate activities** [citation] it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities." (*Burger King*, *supra*, 471 U.S. at pp. 473-474.) Further, "**because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity**,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." (Id. at p. 474 [85 L.Ed.2d at p. 541].)

(*Vons*, p. 447, emphasis added.)

Bullard consistently and persistently travels to California to promote the WWE, his Brand and himself. The First Amended Complaint specifically describes Bullard's contacts with California.  Bullard completely fails to refute the allegations.

As the California Supreme Court stated:

> The **interstate character of defendant's business** is also significant in this balance. Defendant's operation, by its very nature, involves a high degree of interstate mobility and requires extensive multi-state activity. A necessary incident of that business was the foreseeable circumstance of causing injury to persons in distant forums. While the existence of an interstate business is not an independent basis of jurisdiction which, without more, allows a state to assert its jurisdiction, **this element is relevant to considerations of fairness and reasonableness**. The very nature of defendant's business balances in favor of requiring him to defend here.

(*Cornelison v. Chaney*, 16 Cal. 3d 143, 151 (1976), emphasis added.)

Bullard has purposefully availed himself of the benefits of California.

### 2. *The Controversy Arises Out of Bullard's Contacts with California*

Bullard attempts to entirely disassociate the context of his unlawful conduct from the action he took.  In Bullard's view, he lives in Florida and he brutally assaulted someone in Virginia, so those are the only two forums possible.  What Bullard omits from this version, is why this event occurred and the nature of the event.

1        The second prong of the specific jurisdiction test is that the injury "is related to or

2   arises out of the defendant's contacts with the forum." (*Vons*, p. 446, 447; *Burger King*

3   *Corp. v. Rudzewicz*, *supra*, 471 U.S. at 472.)  "[T]he greater the intensity of forum

4   activity, the lesser the relationship between the contact and the claim." (*Vons*, p. 453.)

5   A claim need not arise directly from the defendant's forum contacts in order to be

6   sufficiently related to the contact to warrant the exercise of specific jurisdiction. As long

7   as a claim bears a "substantial connection" to the nonresident's forum contacts, the

8   exercise of specific jurisdiction is appropriate.  (*Vons*, p. 452.)

9            a.    *The Contract Under Which the Parties Were Acting Was*

10                 *with a California Company and with a California Choice of*

11                 *Law Provision*

12       First, the only reason that either Bullard or Anderson were at the location, is

13   because Bullard's employer and Anderson's employer executed a contract – with a

14   California choice of law provision – for Anderson's employer to produce a show with

15   the WWE.  Anderson is not attacked absent this agreement, which renders the claim

16   arising from the forum-related activities.

17            b.    *The Commission of an Intentional Tort Against a California*

18                 *Resident Subjects the Tortfeasor to the Jurisdiction of the*

19                 *California Courts*

20       Furthermore, even without other contacts with the forum state, the commission of

21   an intentional tort that is directed at a California resident provides sufficient minimum

22   contacts to support the exercise of personal jurisdiction over the non-resident defendant.

23   (*Calder v. Jones*, 465 U.S. 783, 790 (1984); *Data Disc, Inc. v. Systems Tech. Assoc.,*

24   *Inc.*, 557 F.2d 1280, 1288 (9th Cir.1977); *Seagate Technology v. A.J. Kogyo Co., Ltd.,*

25   219 Cal.App.3d 696, 702–703 (1990).) In *Calder v. Jones*, a California plaintiff brought

26   a suit for defamation against a writer and the editor of the National Enquirer, a national

27   newspaper based in Florida, but with a circulation of approximately 600,000 in

28   California. The allegedly libelous story concerned a California resident whose television

career was centered in California. The writer lived in Florida and did not personally visit California but relied on phone calls to sources in California for information contained in the article. On these facts the Supreme Court concluded that jurisdiction over defendants was proper "based on the 'effects' of their Florida conduct in California." (*Calder v. Jones, supra*, 465 U.S. at p. 789.)  Defendants knew their article "would have a potentially devastating impact upon [plaintiff]. And they knew that the brunt of that injury would be felt by [her] in the State in which she lives and works. . . ." (*Id.* at pp. 789–790.)  Under the circumstances, the court found defendants must reasonably expect to be " 'haled into court' " in California to defend against plaintiff's tort claims. (*Id.*, p. 790, 104 S.Ct. 1482; *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980).)

In *Data Disc., Inc. v. Systems Tech. Assoc., Inc.*, *supra*, the court found that fraudulent statements directed at a California resident were sufficient to satisfy the requirement of minimum contacts, and that jurisdiction was reasonable because defendant's conduct was purposefully aimed at a California resident. (*Id.*, p. 1288.)  As the Ninth Circuit later stated: " A tortious act, standing alone, can satisfy all three requirements under Data Disc if the act is **aimed at a resident of the state** or has effects in the state." (*Paccar Intern., Inc. v. Commercial Bank of Kuwait*, 757 F.2d 1058, 1064–1065 (9th Cir.1985).)

Simply put, Bullard attacking a California resident results in his actions arising out his contacts with California.

### 3. ***Personal Jurisdiction Over Bullard in California Is Reasonable***

In *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987),the Supreme Court applied a five-factor test in determining whether "traditional notions of fair play" would permit the assertion of personal jurisdiction over a foreign (meaning out-of-state) defendant. The factors are: (1) What is the burden on the defendant? (2) What are the interests of the forum state in the litigation? (3) What is the interest of the plaintiff in

litigating the matter in that state? (4) Does the allowance of jurisdiction serve interstate efficiency? (5) Does the allowance of jurisdiction serve interstate policy interests? (*Id.*, p. 113 (internal citations omitted).)

        a.     <u>There Is a Minimal Burden on Bullard to Defend the</u>
                     <u>Lawsuit in California</u>

"A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.' " (*Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1323 (9th Cir.1998) .) "As [one] court stated, 'in this era of fax machines and discount air travel' requiring [a defendant] to litigate in California is not constitutionally unreasonable." (*Ibid.*, quoting *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990).)

As set forth in detail, the burden on Bullard is minimal, as Bullard is regularly visits California.  Further, since virtually every third party witness is located in California, Bullard will face virtually the same burden regardless of where the case is litigated.

        b.     <u>California Has Strong Interests in the Underlying Litigation</u>

"California maintains a strong interest in providing an effective means of redress for its residents tortiously injured." (*Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1200 (9th Cir. 1988).)

        c.     <u>The Interests of the Plaintiff Are Served by Jurisdiction in</u>
                     <u>California Because all the Witnesses Are Here</u>

Numerous cases indicate that the convenience of the parties is a factor to be considered in determining whether it would be fair to exercise jurisdiction over a defendant who resides in another state. (*Traveler's Health Assn. v. Virginia*, 339 U.S. 643 (1950); *Buckeye Boiler Co. v. Superior Court* (1969) 71 Cal.2d 893, 898—899.)

The Ninth Circuit direct that the Court must consider that the maintenance of a suit outside of California would be inconvenient and costly for a California resident. (*Sinatra v. National Enquirer, Inc.*, *supra*, 854 F.2d at 1200.)

In the circumstances of this case the consideration weighing most strongly in favor of a California forum is the relative burden of defense and prosecution on defendant and plaintiff.

> Defendant states that Nevada is a convenient forum because the witnesses to the accident reside there. While some of the witnesses who will testify at the trial reside in Nevada, plaintiff was also a witness to the accident and she is a California resident. Moreover, there is evidence in California on the amount of plaintiff's damages; and from the perspective of a Nebraska resident faced with litigation outside his state, there is little difference in the burden between defending in Nevada or California. (Cf. Fisher Governor Co. v. Superior Court, supra, 53 Cal.2d 222, 226, 1 Cal.Rptr. 1, 347 P.2d 1.) California has an interest in providing a forum since plaintiff is a California resident.

(*Cornelison v. Chaney*, *supra*, 16 Cal. 3d at 150–51.)

As set forth herein, virtually all of the key witnesses in this matter, except for Bullard, are located in the Los Angeles area. Requiring this matter to be filed in another jurisdiction, only to have all of the discovery and depositions occur in Los Angeles, is extremely burdensome to Anderson.

### d. *Allowing Jurisdiction Allows for Interstate Efficiency*

As noted, virtually all of the witnesses in this case, Anderson, Anderson's medical providers, Anderson's employer, Anderson's coworkers, all reside in California. Regardless of the location of the lawsuit, the witnesses are, and will remain, in California.

If the matter is transferred to Florida, the result will be that Florida lawyers will be required to travel to California to depose Anderson, to depose Anderson's medical providers and depose the key witnesses in the matter. While changing forums may be more convenient for Bullard, it will not be more convenient even for his own lawyers.

e.    *Allowance of Jurisdiction Serves Interstate Policy Interests*

As noted, California has an interest in protecting its citizens from intentional torts. Indeed, that interest alone has been sufficient to support a finding of specific jurisdiction. (*See, Calder v. Jones, supra*, 465 U.S. at 790; *Data Disc, Inc. v. Systems Tech. Assoc., Inc., supra*, 557 F.2d at 1288; *Seagate Technology v. A.J. Kogyo Co., Ltd., supra*, 219 Cal.App.3d at 702–703.)

f.    **No Alternative Jurisdiction Exists for the Claims**

Another factor considered by courts examining jurisdiction is whether an alternative forum exists. Bullard asserts the matter should be venued in the Middle District of Florida. There is a co-defendant in this matter, the WWE, which is a Delaware corporation with its principal place of business in Connecticut. Bullard fails to identify how the Florida courts would have jurisdiction over the WWE.

Other than California, no alternative forum exist where this case could proceed against both defendants.

**D.    California Is the Only Appropriate Venue for the Action**

Bullard's venue arguments are entirely misplaced. In removed actions, the only proper venue is the federal district court with jurisdiction over the location where the state court action was filed. The general venue statute does not apply to actions removed from state court. Rather, in such cases, original venue is satisfied if the action is removed to the district in which the state court action was pending. (28 U.S.C. §§ 1390(c), 1441(a).)

It is immaterial that venue would not have been proper if the action had been brought initially in that district. The removal statute authorizes defendant to remove "to the district court. . . embracing the place where such action is pending." (28 U.S.C. §§ 1390(c), 1441(a); see *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665-666 (1953); *Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F3d 531, 534 (6th Cir. 2002).)

If Bullard wanted to challenge venue, he was required to do so in state court. Having removed the matter to this Court from the Los Angeles Superior Court, venue is necessarily appropriate.

**E.    Plaintiff Should Be Permitted to Perform Jurisdictional Discovery**

A plaintiff is generally entitled to conduct discovery on a jurisdictional issue before the trial court grants a motion to quash. (*Goehring v. Superior Court,* 62 Cal.App.4th 894, 911 (1998).)  "Discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." (*Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003), (citing *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)).

When a defendant challenges personal jurisdiction, courts generally permit depositions confined to the issues raised in the motion to dismiss. (8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2009 at 52-54; 4A *Moore's Federal Practice* ¶ 30.53(5).)  In an appropriate case, courts will reverse a dismissal for lack of personal jurisdiction, on the ground that the plaintiff was improperly denied discovery.  (See, *Skidmore v. Syntex Laboratories*, 529 F.2d 1244, 1248-49 (5th Cir. 1976); *Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1143-46 (5th Cir. 1973).

Plaintiff has provided significant evidence demonstrating Bullard's own admissions of contacts with California.  Bullard has provided a self-serving declaration stating he has no contacts with the forum.  Plaintiff should be permitted to perform discovery into the extent of the contacts that Plaintiff was able to identify through Bullard's own publications, and determine whether there are more to these contacts that Bullard lets on.

Opposition to Motion to Dismiss

## IV. **CONCLUSION**

The Supreme Court has not yet eliminated general jurisdiction as means to establish personal jurisdiction over a party for a specific lawsuit. Just through an examination of Bullard's own posted information, Plaintiff has identified continuous and systematic contacts between Bullard and California sufficient to give rise to general jurisdiction. If the Court does not find these contacts to establish general jurisdiction, Plaintiff requests the opportunity to perform additional discovery to determine whether additional contacts exist.

Further, lawsuit did arise directly from Bullard's forum related contacts. Bullard's employer contracted with a California company to produce television content featuring its employees, including Bullard. That contract has a California choice of law provision. During filming, in front of numerous witnesses who are California residents (because they are employed by Uranus), Bullard brutally attacked Anderson. Anderson is a California resident. All of his health care resulting from the attack was provided by medical practitioners in California, and paid for under a California workers' compensation policy.

All of the witnesses, except Bullard, are in California. California is the appropriate forum for this action.

Bullard's motion should be denied. At a minimum, the ruling should be stayed to permit jurisdictional discovery.


Dated: October 19, 2017

MCGUINNESS & ASSOCIATES


By: _____
Joseph G. McGuinness
Attorneys for Plaintiff
Donald Anderson